OPINION
Appellant Duane Mingle appeals from the March 2, 1999, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, terminating appellant's parental rights and granting permanent custody of Baby Boy Mingle, appellant's son, to appellee Stark County Department of Human Services.
 STATEMENT OF THE FACTS AND CASE
On October 29, 1998, appellee Stark County Department of Human Services (SCDHS) filed a Complaint for Permanent Custody of Baby Boy Mingle, who was born on July 30, 1998. The Complaint alleged that Baby Boy Mingle was a neglected and/or dependent child. The child's natural father is appellant Duane Mingle and the child's natural mother is Melinda Mingle. Appellee had prior cases with Melinda Mingle involving two other children (Case Nos. JU95768 and JU97387) and with appellant involving three other children (Case No. JU86137). On January 7, 1999, the parties stipulated that the child was a dependent child. Thereafter, a hearing on appellee's Complaint for Permanent Custody of Baby Boy Mingle commenced on January 20, 1999. Pursuant to a Judgment Entry filed on March 2, 1999, the trial court terminated both appellant's and Melinda Mingle's parental rights and granted permanent custody of the child to appellee. The trial court also filed findings of fact and conclusions of law on the same date. On March 15, 1999, Melinda Mingle filed an appeal from the trial court's March 2, 1999, order. Pursuant to an Opinion filed on November 22, 1999, this court affirmed the judgment of the Stark County Court of Common Pleas, Family Court Division. It is from the trial court's March 2, 1999, Judgment Entry that appellant now prosecutes his appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED BY TAKING JUDICIAL NOTICE OF PRIOR JUVENILE CASES JU-95768, JU-97387, and JU-86137.
ASSIGNMENT OF ERROR II
 THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
ASSIGNMENT OF ERROR III
 THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I
Appellant, in his first assignment of error, argues that the trial court erred by taking judicial notice of prior juvenile case numbers JU95768, JU97387, and JU86137. As is stated above, Case Nos. JU95768 and JU97387 involved Melinda Mingle whereas appellant was involved in Case No. JU86137. The identical assignment of error was raised in the appeal filed by Melinda Mingle. For the reasons set forth in this court's Opinion in In re Baby Boy Mingle (Nov. 22, 1999), Stark Appeal No. 1999CA00075, unreported, appellant's first assignment of error is denied.
 II, III
Appellant, in his second and third assignments of error, maintains that the trial court's decision to award permanent custody of Baby Boy Mingle, appellant's son, to appellee was against the manifest weight of the evidence. Appellant specifically contends that the judgment of the trial court that Baby Boy Mingle cannot or should not be placed with appellant within a reasonable time and that the best interest of such child would be served by the granting of permanent custody to appellee were both against the manifest weight and sufficiency of the evidence. We disagree. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment or that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610. As is stated above, the parties had stipulated that Baby Boy Mingle was a dependent child as defined in R.C. 2151.04. R.C. 2151.353(A)(4), provides, in relevant part, as follows: "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: (4) Commit the child to the permanent custody of a public children services agency . . . if the court determines in accordance with division (E) of Section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of Section 2151.414
of the Revised Code that the permanent custody commitment is in the best interest of the child. . . ."
R.C. 2151.414(E) requires the presentation of clear and convincing evidence that one or more of the listed factors exist as to each parent before an award of permanent custody can be made. Such section, in relevant part, provides as follows:
 "(E)(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. . . .
 (E)(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (E)(9) The parent for any reason is unwilling to provide food, clothes, shelter, and other basic necessities for the child. . . ."
We have set forth the language in R.C. 2151.414(E)(1), (4) and (9) because those are the subsections the trial court found were applicable to the case sub judice. The language actually used in the complaint filed by appellee and in the trial court's findings contains the additional language that the parents "failed continuously and repeatedly for a period of six (6) months to substantially remedy the conditions. . . ." (Emphasis added.) The "six month" language was in a previous version of 2151.414 but was deleted as of September 18, 1996. However, since the "six month" language was in the complaint and that is what the appellant received notice of, we find that SCDHS had to prove that allegation to prevail on that portion of its complaint. But, it was impossible for the SCDHS to prove that allegation by clear and convincing evidence in the case sub judice. The parents could not have failed for a period of six months following the placement of Baby Boy Mingle outside his home to remedy the conditions causing removal when Baby Boy Mingle was removed from Mingles' care by court order less than six months prior to the permanent custody hearing. Therefore, we find that the trial court's finding of fact as to the "six month" language is unsupported by the evidence. However, the trial court did make other findings under 2151.414(E) that, if supported by the evidence, would support the trial court's determination that Baby Boy Mingle cannot be placed with appellant at this time or in the foreseeable future or should not be placed with appellant. The trial court found that: "[t]he parents have demonstrated a lack of commitment toward the child by failing regularly to support, visit, and communicate with him when able to do so." The trial court further found that "[t]he parent is unwilling or unable to provide food, clothing, shelter, and other basic necessities for this child." At the January 20, 1999, hearing, evidence was adduced that appellant was unwilling to provide food, shelter and other basic necessities for Baby Boy Mingle. Carol Hershey, a parenting instructor and case manager with Goodwill Industries, testified at the hearing that the home in which appellant was residing with his wife, Melinda Mingle, was "just extremely so, substandard housing. Uh, there was large holes in the ceiling. In the one bathroom you could actually see up through to the attic. The home was in, in great need of repair. . .". Transcript of January 20, 1999, hearing at 38. Hershey further testified that there was inadequate food in the house and that there were inadequate supplies for children. When Hershey was asked whether the two bathrooms in the home were functional, Hershey responded as follows: "Uh, the one bathroom they were not using at all. And, they told us that. Uh, Duane [appellant] told me before we went on a home visit that the one bathroom, uh, the prior tenants had put a dog in there and it, uh, really had a very bad odor. So they just closed the door and do not use it." Transcript of Hearing at 39 — 40. In addition to permeating the bathroom, the odor also permeated the front area which included the kitchen and hallway as well as one of the children's bedrooms. In all, Hershey felt that the home was inappropriate for children. Additional evidence was adduced at the hearing regarding appellant's unwillingness to maintain suitable appropriate housing for his children. At the time of the hearing, appellant was living with his wife, Melinda Mingle, in appellant's mother's home. Norma Thorpe, a family services worker with the Stark County Department of Human Services, testified at the hearing that during her last visit on November 20, 1998, "I went into the house, uh, she [appellant's mother] refused to let us any further than the, the living room. Uh, I wanted to take pictures at that point. Uh, the living room was very dirty. Uh, there was dirty dishes on the floor. There was, you know, dirt everywhere, the two dogs were still in the house." Transcript of January 20, 1999, hearing at 78. Thorpe further testified that appellant and his wife had moved "probably six times or so" and that all of the houses in which they resided had "basically been borderline at very best to . . . awful." Transcript of January 20, 1999, hearing at 78. Carol Hershey also testified at the hearing that while, as part of his case plan, appellant was required to maintain one job, appellant was unable to do so and therefore was unable to provide basic necessities for his family. Hershey testified that the fact that appellant was switching so many jobs was one reason he was unable to meet his family's basic needs. According to Hershey, appellant often missed work for a variety of reasons. For example, appellant missed work one day after visiting a friend in the hospital until 3:00 A.M. For such reason, appellant was too tired to get up for work the next day. Hershey testified that appellant's absences at work were an issue for her "because I, I, I guess I wanted him to see that this possibly was not a good decision and I said, Duane, how did you help your friend by being there at the hospital. And he said I offered support for him. And I said but it didn't change, it didn't help him get better, it didn't change the outcome of, of his predicament. And you could have sent a card, you could have called him the next day after work that his priorities should be for his [appellant's] family and the needs." Transcript of January 20, 1999, hearing at 34. Not only was there clear and convincing evidence that appellant was not willing or able to provide food, clothing or shelter, or other basic necessities to Baby Boy Mingle, but clear and convincing evidence was also presented at the hearing that appellant demonstrated a lack of commitment towards Baby Boy Mingle by failing to regularly support, visit or communicate with the child when able to do so. During the two months prior to the January 20, 1999, hearing neither appellant nor Melinda Mingle had scheduled visitation with the child. Based on the foregoing, we find that there was clear and convincing evidence that Baby Boy Mingle cannot be placed with appellant within a reasonable time, or should not be placed with appellant. The next issue for determination, therefore, is whether in accordance with R.C. Code Section 2151.414(D) permanent commitment is in the best interest of the child. Pursuant to R.C.2151.414(D), the trial court is to consider various factors in determining the best interests of the child: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; 2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. At the best interest hearing on January 21, 1999, Norma Thorpe, the family services worker with the Stark County Department of Human Services, testified that Baby Boy Mingle, who had been placed with his half-siblings, was developmentally on target at the time of the hearing. Thorpe further testified that the child had bonded with his half siblings and with his foster parents. Thorpe also testified that since appellant and Melinda Mingle had not spent a great deal of time with Baby Boy Mingle, Baby Boy Mingle had bonded very little with them. Based on the foregoing, we find that the trial court's findings that Baby Boy Mingle cannot and should not be placed with appellant within a reasonable period of time and that it was in Baby Boy Mingle's best interest for appellant's parental rights to be terminated were supported by clear and convincing evidence. We further find that the trial court's granting of permanent custody of Baby Boy Mingle to appellee is supported by competent, credible evidence and is not against the manifest weight or the sufficiency of the evidence.
The Judgment of the Stark County Court of Common Pleas, Family Court Division, is, therefore, affirmed.
 _______________________________ EDWARDS, J.
HOFFMAN, P.J. and FARMER, J. CONCUR.